# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PRECISION RX COMPOUNDING, LLC, NORTHERN VA COMPOUNDERS, PLLC, TOTH ENTERPRISES, II, PA, THE DAILY DOSE, LP. AND CPRX PHARMACY, LP, <br><br> Plaintiffs, <br><br> v. <br><br> EXPRESS SCRIPTS HOLDING COMPANY And EXPRESS SCRIPTS, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) No. 4:16-CV-69 RLW ) ) ) ) ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Express Scripts' Motion to Compel Production of Documents and Incorporated Memorandum in Support (ECF No. 134), Express Scripts' Motion to Compel Production of Documents and incorporated Memorandum in Support (ECF No. 138), and Express Scripts' Motion to Set Deadline for Substantial Completion of Plaintiffs' Document Production and Incorporated Memorandum in Support (ECF No. 147).

## BACKGROUND

This case alleges an ongoing and multi-faceted conspiracy between the nation's largest pharmacy benefit managers ("PBMs")—including Express Scripts, CVS Health Corporation, Optum Rx, Inc., and Prime Therapeutics, LLC—to jointly boycott compounding pharmacies to eliminate Plaintiffs from the market for pharmaceuticals covered by group and individual health plans (hereinafter a "plan" or "plans"). Plaintiffs further allege that Express Scripts and its co-conspirators shifted the filling of patients' prescriptions to pharmacies in which the Defendants and their co-conspirators hold an economic interest. Plaintiffs claim that this type of horizontal

group boycott is a "well-established naked restraint of trade barred per se under federal antitrust laws." (ECF No. 1 at 2).

Plaintiffs claim that Express Scripts and its co-conspirators have collectively employed tactics designed to ensure that the compounding pharmacy industry, and Plaintiffs in particular, cannot survive. Plaintiffs allege that, through their role as the collectively dominant pharmaceutical claim administrators for group and individual health plans, Express Scripts and its co-conspirators improperly decide whether and to what extent pharmacies are reimbursed for prescribed and filled drugs. Plaintiffs claim that Express and its co-conspirators have conspired with each other to boycott compounding pharmacies by eliminating coverage or payment for compounding ingredients, cutting off network access, and deployed a series of unreasonable restrictions and rules that would make it impossible for Plaintiffs and other Pharmacies to fill prescriptions for plan-covered patients and obtain reimbursements that would cover their costs. For example, Plaintiffs allege that Express Scripts and its co-conspirators: (i) engaged in a campaign of misleading statements impugning the safety and efficacy of compounded drugs through communications to patients and/or doctors; (ii) drastically reduced the revenues compounding pharmacies would be reimbursed for prescribed compounded drugs by eliminating any coverage or denying claims for compounded medications, even when no changes had been made to the underlying health plans; (iii) orchestrated onerous procedural and administrative obstacles for the compounding pharmacies to fill prescriptions and obtain reimbursement; (iv) conducted abusive audits of compounding pharmacies on claims the PBMs had approved many months earlier and then withheld reimbursement payable to compounding pharmacies on unrelated claims; (v) restricted and/or eliminated the use of mail-order delivery of compounded

drugs; and (vi) removed pharmacies from the networks altogether by terminating the provider agreements, without cause or on a pretextual basis. (ECF No. 103, ¶10)

## LEGAL STANDARD FOR MOTION TO COMPEL

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1). The Federal rules further provide for limits on discovery requests. Specifically,

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii). Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery.

## DISCUSSION

### A. Motion to Compel (ECF No. 134)

Express Scripts asks the Court to compel the production of three categories of documents. (1) Documents from the files of individuals identified in Plaintiffs' Rule 26 initial disclosures. (2) Documents concerning alleged co-conspirators other than CVS Health Corporation, OptumRX, Inc., and Prime Therapeutics, LLC. (3) Documents showing whether Plaintiffs complied with the terms of their respective agreements with Express Scripts and other PBMs.

### 1. Documents from the files of individuals identified in Plaintiffs' Rule 26 disclosures

In their Rule 26 disclosures, Plaintiffs identified eighteen individuals "associated with Plaintiffs who are likely to have discoverable information supporting Plaintiffs' claims in this case." (ECF 134 at 3). Among that group, Plaintiff Northern VA Compounders identified Gregory Chase and Wadid Girgis and Plaintiff Precision identified Randy Leonard. (ECF No. 134 at 4). Plaintiffs advised Express Scripts that the files held by Messrs. Chase, Girgis, and Leonard are "redundant" to those held by other custodians. (ECF No. 134 at 5; ECF No. 136 at 2). Plaintiffs further told Express Scripts that there was no need to search their files because Plaintiffs do not intend to use their documents or introduce their testimony at trial. (ECF No. 134 at 5; ECF No. 136 at 2). Plaintiffs agreed to conduct a search for and produce relevant and responsive, non-duplicable documents, subject to mutually agreeable search terms concerning the possession, custody or control of Precision or Northern VA. (ECF No. 136 at 2). Thus, the Court finds that this issue is moot.

### 2. Documents concerning alleged co-conspirators other than CVS Health Corporation, Optum RX, Inc., and Prime Therapeutics, LLC

In requests for production numbers 110, 111, 112, 118, and 120, Express Scripts seeks documents related to Plaintiffs' interactions with PBMs. (ECF No. 135 at 7-8). Express Scripts seeks information regarding other PBMs in order to show that all allegedly negative conduct was spurred by a legitimate, independent business justification—not a conspiracy. (ECF No. 134 at 8). Express Scripts argues that "[e]vidence that other PBMs that did not participate in the alleged conspiracy took actions similar to those adopted by Express Scripts will show that Express Scripts' conduct was likewise spurred by its own independent business interest." (ECF No. 134 at 9). Express Scripts notes that Plaintiffs allege in their complaint that other PBMs are

part of the conspiracy and, therefore, are relevant to discovery in this case. (ECF No. 134 at 9 (citing Compl., ¶¶22, 23)). That is, Express Scripts claims that it is entitled to discovery to determine whether its conduct was consistent with independent actions taken by other pharmacy benefit managers that Plaintiffs claim did not participate in the alleged conspiracy. (ECF No. 137 at 4).

Plaintiffs have refused to produce documents related to other PBMs, other than Express Scripts, CVS, Optum, and Prime. (ECF No. 134 at 7). Plaintiffs assert that documents related to other PBMs are not relevant to this case. (ECF No. 134 at 8). Plaintiffs maintain that Express Scripts is on a fishing expedition to find contractual breaches by Plaintiffs that have nothing to do with this case. (ECF No. 134 at 10-11).

The Court agrees that Express Scripts has not yet demonstrated that documents related to other PBMs is relevant to the instant action. *See Herman v. Seaworld Parks & Entm't, Inc.*, No. 8:14-CV-3028-T-35JSS, 2016 WL 3746421, at *2 (M.D. Fla. July 13, 2016) (denying motion to compel production of a contract between a party and non-party that is not the subject of the litigation as irrelevant); *Leisman v. Archway Med., Inc.*, No. 4:14CV1222 RLW, 2015 WL 4994084, at *2 (E.D. Mo. Aug. 19, 2015) (denying discovery related to other manufacturers, product lines and time periods outside those pleaded in the complaint). Express Scripts can demonstrate that its actions were consistent with its contracts with Plaintiffs without referencing Plaintiffs' contracts with other entities. The Court denies Express Scripts' Motion to Compel as to this point.

### 3. Documents showing whether Plaintiffs complied with the terms of their respective agreements with Express Scripts and other PBMs

Express Scripts seeks documents related to Plaintiffs' compliance with PBM contracts. (ECF No. 134 at 12-13). Express Scripts offered to allow Plaintiffs to produce documents from a

group of agreed-upon custodians using specific search terms. Express Scripts seeks all communications between Plaintiffs and any PBM regarding negotiations, alleged contractual breaches, and/or termination of any contract or other agreement. Express Scripts also wants any documents concerning instances where Plaintiffs encouraged or offered incentives for a patient to use a compounded medication instead of a mass-produced drug. (ECF No. 134 at 10). Express Scripts claims that this information is relevant because Plaintiffs have alleged that Express Scripts' enforcement of the terms of its contracts (including conducting audits of and terminating prescriber agreements with Plaintiffs and other compounding pharmacies) were the product of an antitrust conspiracy. (ECF No. 134 at 11). Express Scripts argues that whether Plaintiffs complied with the terms of their contracts with Express Scripts (and other PBMs) is relevant to whether the Plaintiffs breached the terms of their agreement and the PBMs had a valid and legitimate business justification for enforcing the terms of their contracts, which will be a defense for Express Scripts. (ECF No. 134 at 11-12; ECF No. 137 at 5).

In response, Plaintiffs argue that Express Scripts' request amounts to a fishing expedition. Plaintiffs assert that Express Scripts admits it has no knowledge of any documents that will demonstrate that Plaintiffs failed to comply with or breached terms of agreements with other PBMs. (ECF No. 136 at 5). Plaintiffs further note that Express Scripts never has brought an action for breach of contract or alleged breach of contract as a defense to this action. (ECF No. 136 at 6). Plaintiffs assert that Express Scripts has not identified how any breaches with other PBMs would be relevant to the instant action. Finally, Plaintiffs note that the District Court has rejected other previous "fishing expeditions." (ECF No. 136 at 7).

The Court denies Express Scripts' Motion to Compel. The documents requested by Express Scripts are far too attenuated from the issues at hand and are too speculative as to their

relevance to the instant case. The Court will not order the wholesale production of Plaintiffs' contracts with third parties on the unsubstantiated notion that Plaintiffs somehow breached those agreements in a manner similar to those that may be used as a defense by Express Scripts. The Court denies the Motion to Compel, unless Express Scripts can demonstrate some greater significance to this action than the existence of some alleged breaches. Likewise, the Court will not order the production of documents related to Plaintiffs' incentives for a patient to use a compounded medication because of its little relevance to Express Scripts' alleged anti-competitive behavior.

### B. Motion to Compel (ECF No. 138)

"Although the Supreme Court has developed a multifactor balancing test to determine whether a plaintiff has standing to sue under the antitrust laws, the threshold inquiry must focus on the plaintiff's alleged injury. This inquiry is potentially dispositive: if there is no showing of injury, or if the injury alleged or proven is not an "antitrust injury," the plaintiff does not have a claim cognizable under the antitrust laws." *Midwest Commc'ns v. Minnesota Twins, Inc.*, 779 F.2d 444, 450 (8th Cir. 1985).

Here, Plaintiffs claim to be in competition with Express Scripts and its alleged co-conspirators, and that they have suffered "antitrust injury" because their "revenues and profits have decreased … [and] will decrease even more." (Second Amended Complaint (SAC), ECF No. 103, ¶¶160, 162). In requests numbers 111, 115, 118, 120, and 121, Express Scripts seeks information regarding Plaintiffs' pricing, profit margins, and other claims data concerning disbursements of compound medications. (ECF No. 138 at 5). Express Scripts claims that this information is relevant to Plaintiffs' alleged antitrust injuries. Express Scripts claims that it should be allowed to investigate whether these claimed injuries (reduced margins and declining

sales) are actually symptoms of broader anti-competitive effects occurring through the relevant market. (ECF No. 138 at 4-5). Express Scripts intends to use this market-wide data to show that there has been no harm to competition. (ECF No. 138 at 5). Express Scripts claims it is entitled to information related to market-wide competition instead of just harm to the Plaintiffs' individual businesses. (ECF No. 138 at 6). Therefore, Express Scripts claims it needs transactional data concerning the prescription claims filled by Plaintiffs and Plaintiffs' margins on those transactions. (*Id.*). Express Scripts maintains that it is entitled to its entire requested discovery and Plaintiffs should not be allowed to determine what is "necessary" for Express to prove its defenses. (ECF No. 145).

Plaintiffs object to these requests and offer to produce data related to Plaintiffs' injury and damages. Plaintiffs will produce sales data, including prescription reimbursements, dispensing fees, copayments and/or coinsurance, and other sources of revenue, and will produce data from their accounting systems regarding their costs of goods sold, overhead, and other expenses, as well as standard financial reporting data in order to demonstrate profit margins. (ECF No. 142).

At this point, the Court holds that Plaintiffs' proposed production is sufficient. The Court finds that Express Scripts' requested document production is overbroad and unduly burdensome. In fact, if the Court were to allow Express Scripts' entire proposed discovery, then it would lead to mini trials regarding the cause of market-wide fluctuations in revenue. Therefore, the Court denies Express Scripts' Motion to Compel and orders Plaintiffs to produce documents as outlined in their response within thirty (30) days.

### C. Motion to Set Deadline for Substantial Completion of Plaintiffs' Document Production

Express Scripts asks this Court to set a deadline for substantial completion of Plaintiffs' document production from the Third Set of Requests for Production. (ECF No. 147). Express Scripts asks this Court to require Plaintiffs to (1) complete their document production in response to Express Scripts' Third RFPs no later than April 27, 2018; and (2) apply all of Express Scripts' search terms to the agreed set for custodians, without modification. (ECF No. 147 at 2). Express Scripts complains that Plaintiffs have not provided any documents in response to the Third Set of Requests for Production. (ECF No. 147 at 3-4).

In response, Plaintiffs assert that the parties are still in discussions regarding the proposed list of search terms, as well as the scope, burden and proportionality of the search terms. (ECF No. 150 at 5). Plaintiffs request the Court deny Express Scripts' Motion and allow Plaintiffs sixty (60) days to substantially complete production. (ECF No. 150 at 8).

The Court orders Plaintiffs to make a substantial production of documents within the next thirty (30) days. This already protracted litigation needs to progress at a quicker pace in order to stay on schedule with the much-revised case management order. Further, both sides are experienced law firms with sufficient staffing for a large document review. The Court, however, does not believe that the issue of search terms has been adequately discussed by the parties and that Court intervention would be premature. The Court orders the parties to re-commence negotiations and come to an agreement within five (5) days.

Accordingly,

**IT IS HEREBY ORDERED** that Express Scripts' Motion to Compel Production of Documents and Incorporated Memorandum in Support (ECF No. 134) is **DENIED**, in part, and **MOOT**, in part.

**IT IS HEREBY ORDERED** that Express Scripts' Motion to Compel Production of Documents and incorporated Memorandum in Support (ECF No. 138) is **DENIED**.

**IT IS HEREBY ORDERED** that Express Scripts' Motion to Set Deadline for Substantial Completion of Plaintiffs' Document Production and Incorporated Memorandum in Support (ECF No. 147) is **GRANTED**, in part. Plaintiffs shall make a substantial production of documents within the next thirty (30) days in response to Express Scripts' Third Set of Requests for Production. The parties shall immediate recommence negotiations regarding search terms and come to an agreement within five (5) days.

Dated this 7th day of May, 2018.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE