UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PRECISION RX COMPOUNDING, LLC, and C & M HEALTH PRO, LLC, | ) ) ) |
| Counter-Defendants, | ) ) ) Case No. 4:16-cv-00069-RLW |
| v. | ) ) |
| EXPRESS SCRIPTS, INC., | ) ) |
| Counter-Plaintiff. | ) |

**MEMORANDUM IN SUPPORT OF EXPRESS SCRIPTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Counter-Plaintiff Express Scripts, Inc. ("Express Scripts") respectfully submits this memorandum of law in support of its motion for partial summary judgment against Counter-Defendants Precision Rx Compounding, LLC ("Precision") and C&M Health Pro, LLC, d/b/a/ All Scripts ("C&M").

**PRELIMINARY STATEMENT**

On May 31, 2018, Precision and C&M's claims in this action were dismissed with prejudice. (Dkt. 170). That dismissal left Express Scripts' counterclaims as the only claims remaining in this case. These claims are for (1) breach of contract and (2) unjust enrichment. (Dkt. 113). Express Scripts moves for summary judgment on its breach of contract claim.

The claims at issue in Express Scripts' breach of contract claim fall into two categories: (1) monies owed for audit discrepancies; and (2) monies owed for pharmacy

1

reversals.

**(1) Monies owed for Audit Discrepancies**:  Express Scripts routinely audits member pharmacies for discrepant and non-compliant claims.  Audits of Precision and C&M uncovered $1,613,960.20 in discrepant claims.  Following the audits, $381,708.20 was recovered from Precision and C&M; $1,232,252.00 remains unpaid.  Express Scripts seeks $896,210.00 for discrepancies that relate to audits of Precision, and $336,042.01 for discrepancies that relate to the audit of C&M.  Neither Precision nor C&M have challenged these discrepancies, nor has any discovery been produced in this case to dispute the unpaid audit discrepancies.  All discovery has closed.  (Dkt. 133, 181).  These claims are ripe for summary judgment.

**(2) Monies owed for Pharmacy Reversals:**   Pharmacies have the ability to reverse prescription claims, even after payment.  For example, if a patient never picks up a prescription, the pharmacy should "reverse" that claim, because the prescription was not dispensed.   Here, C&M reversed 43 prescription claims.  C&M reversed those 43 claims after Express Scripts paid C&M $196,906.97 for the claims.  C&M admitted that it reversed the claims, and that it received payment for the reversed claims.  And it is undisputed that C&M has not returned payment for the reversed claims.  Accordingly, in addition to the monies owed for the audit discrepancies, Express Scripts seeks summary judgment on the $196,906.97 Express Scripts paid for claims that C&M reversed and yet where C&M did not reimburse Express Scripts.

The contracts that governed the relationship between Express Scripts, Precision, and C&M required Precision and C&M to return these payments.  The undisputed facts

show that Precision and C&M never did.  On these undisputed facts, summary judgment is appropriate.

## STATEMENT OF FACTS[1]

### Express Scripts' Role as a Pharmacy Benefits Manager and the Importance of Pharmacy Integrity to Express Scripts

Express Scripts' mission is to make prescription drugs safer and more affordable for its clients and their members.[2]  Express Scripts provides value to its client health plans by reducing waste and inefficiency in prescription drug spend. As a pharmacy benefits manager ("PBM"), Express Scripts contracts with third-party payors and health plan administrators — such as insurers, HMOs, and employers — to facilitate delivery of prescription drugs to health plan members or other beneficiaries.[3]

To fulfill its role, Express Scripts creates pharmacy provider networks by negotiating with pharmacies that agree to fill prescriptions for health plan members.[4]  In exchange, the pharmacies get a number of benefits, including access to Express Scripts' clients' health plan members as customers, payment within specified times, dispensing fees, marketing and advertising, on-line determination of member eligibility, and access

---

[1] Pursuant to Local Rule 7-4.01(E), Express Scripts has filed a separate Statement of Uncontroverted Material Facts in Support of Summary Judgment ("SUMF").  The "Statement of Facts" section in this Memorandum states certain additional facts to provide context about the events at issue in this action.  But the facts necessary for this Court to grant summary judgment for Express Scripts are exclusively those facts in Express Scripts' SUMF.

[2] Declaration of Greg Blaies ("Blaies Decl") at ¶6.

[3] *Id*. at ¶6.

[4] *Id*. at ¶7.

to Express Scripts' pharmacy support desk.[5]

The integrity and reputation of Express Scripts' pharmacy provider network is critical to Express Scripts' business, client relationships, and patient safety.[6] A pharmacy that does not meet Express Scripts' high standards of professionalism and integrity threatens Express Scripts' pharmacy provider network, as well as Express Scripts' reputation for providing trusted quality services to its clients, and it can threaten patient safety.[7]

## Express Scripts' Contractual Relationships with Precision and C&M

Precision and C&M were pharmacies in Express Scripts' network of pharmacies pursuant to a Provider Agreement and Provider Manual (collectively, the "Contract").[8] When Precision and C&M agreed to participate in Express Scripts' pharmacy provider networks, they agreed to abide by Express Scripts' quality standards and best pharmacy practices. Among other things, Precision and C&M agreed that they would submit all prescription drug claims in accordance with all laws, rules, regulations, and the Contract.[9] Precision and C&M further agreed that claims that were not submitted in accordance with

---

[5] *Id*. at ¶7.

[6] *Id*. at ¶8.

[7] *Id*. at ¶8.

[8] SUMF ¶1; Blaies Decl. Ex. 1 (the "Provider Agreement" between Express Scripts and Precision); Ex. 2 (the "Provider Agreement" between Express Scripts and C&M); Ex. 3 (excerpts of the 2015 "Network Provider Manual," which was effective July 2015 and the 2016 "Network Provider Manual," which was effective beginning January 2016). The Provider Manual is expressly incorporated into the Provider Agreement such that, together, they form the Contract. SUMF ¶2; Blaies Decl. Exs. 1, 2 §7.3. The Contract is governed by Missouri law. SUMF ¶3; Blaies Decl. Ex.1 at §7.11; Ex. 2 at §7.8.

[9] SUMF ¶4; Blaies Decl. Ex. 3, p. 34, 37 (2015 Provider Manual and 2016 Provider Manual).

these requirements were subject to reversal and recoupment by Express Scripts.[10]

## The Importance of Pharmacy Audits

To help ensure the integrity of its pharmacy network, and as a service to its clients, Express Scripts undertakes routine audits of the approximately 65,000 pharmacies in its network.[11]  Since Express Scripts does not have employees physically present at the pharmacies when prescriptions are dispensed, such audits are critical in helping to ensure that pharmacies in the Express Scripts network are dispensing prescriptions in accordance with applicable state and federal laws, the Provider Agreement, and the Provider Manual.[12]

Express Scripts does not audit a pharmacy for any specific issue, but rather audits specific prescription drug claims to determine if the claim that was submitted to Express Scripts for payment was submitted in accordance with the applicable law, the Provider Agreement, and the Provider Manual.[13]  Express Scripts primarily undertakes two types of audits:  (1) on-site audits; and (2) desk audits.[14]  Each audit that Express Scripts undertakes is assigned a unique audit number.[15]

An on-site or field audit entails an Express Scripts auditor physically visiting a pharmacy and reviewing selected prescription claims, quality assurance documentation,

---

[10] Blaies Decl. ¶5.

[11] *Id*. at ¶8.

[12] *Id*. at ¶19.

[13]*Id*. at ¶20.

[14]*Id*. at ¶21.

[15]*Id*.

5

procedures, and credentialing.[16]  Express Scripts also conducts desk audits, which entail a pharmacy receiving a request for certain documentation regarding specific prescription drug claims.[17]

Under the Contracts with Precision and C&M, if, during the course of an audit, Express Scripts determines that a prescription was dispensed in violation of applicable laws and/or the Contract, Express Scripts may recover the amount paid to the pharmacy for that particular claim.[18]  Moreover, under the Contract, Precision and C&M agreed that if they did not respond to an audit, or failed to supply requested information, "100% of the amount for the claim(s) in question [would] be immediately due and owing" to Express Scripts.[19]

## The Audits of Precision

On October 13, 2015, Express Scripts performed a routine on-site audit at Precision.[20]  During the audit, Express Scripts identified a number of claims that were not submitted in accordance with the terms of the Contract.[21]  The final audit findings showed discrepancies that total $217,059.87.[22]

From September 2015 – March 2016, Express Scripts also performed desk audits

---

[16] Blaies Decl. ¶22.

[17] *Id*. at ¶23.

[18] SUMF ¶5.

[19] *Id*. at ¶6.

[20] SUMF ¶8; Blaies Decl. Ex. 4.

[21] SUMF ¶9.

[22] *Id*. at  ¶10.

of Precision.[23]  During these audits, Express Scripts identified a number of claims that were not submitted in accordance with the terms of the Contract.[24]  These desk audit findings showed discrepancies that total $1,112,036.00.[25]  Precision failed to respond and provide any information to substantiate the validity of any of these discrepant claims.[26]

While Express Scripts was able to recover some of the discrepant amounts that were identified during the field and desk audits, $896,210.00 still remains unpaid and owing to Express Scripts.[27]

### The Audit of C&M

On January 28, 2016, Express Scripts performed a routine on-site audit at C&M.[28] During the audit, Express Scripts identified a number of claims that were not submitted in accordance with the terms of the Contract.[29]  The final audit findings showed discrepancies that total $501,924.20.[30]  C&M failed to provide to respond and provide any information to substantiate the validity of any of these discrepant claims.[31]

While Express Scripts was able to recoup some of the discrepant amounts that were identified during the field audit, $336,042.07 still remains unpaid and owing to

---

[23] SUMF ¶11.

[24] SUMF ¶12; Blaies Decl. Ex. 5.

[25] SUMF ¶13.

[26] *Id*. at ¶14.

[27] *Id.* at ¶15.

[28] *Id*. at ¶16.

[29] SUMF ¶17; Blaies Decl. Ex. 6.

[30] SUMF ¶18.

[31] *Id*. at ¶19.

Express Scripts.[32]

### C&M's Reversal of Claims

There are circumstances in which a pharmacy will reverse a prescription drug claim previously submitted to Express Scripts.[33] For example, if a patient does not come in to pick up a prescription, the pharmacy will reverse the claim since it was never actually dispensed.[34] A pharmacy's reversal of a claim is an acknowledgement that the claim should not be paid (or should not have been paid if payment was already made).[35]

C&M reversed 43 prescription claims with fill dates between December 22, 2015 and June 15, 2016.[36] Express Scripts paid C&M $196,906.97 for these claims, and C&M reversed all of these claims after receiving payment from Express Scripts for the claims.[37] To date, C&M has not reimbursed Express Scripts for the reversed claims.[38] Therefore, $196,906.97 remains unpaid and owing to Express Scripts.[39]

### **LEGAL STANDARD**

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P.

---

[32] SUMF ¶20.
[33] Blaies Decl. ¶41.
[34] *Id.*
[35] SUMF ¶21.
[36] *Id.* at ¶22.
[37] *Id.* at ¶23.
[38] *Id.* at ¶24.
[39] *Id.* at ¶25.

8

56(a)). The movant bears the initial responsibility of informing the district court of the basis for its motion, and of identifying the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). The Eighth Circuit "ha[s] acknowledged that this initial burden on the movant is 'far from stringent' and 'regularly discharged with ease.'" *Bedford*, 880 F.3d at 996 (quoting *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001)).

Once the moving party establishes this initial burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *W. Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832, 837 (8th Cir. 2015) (internal quotations omitted). The nonmoving party's burden is not insubstantial. It requires the nonmoving party to "substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (internal quotations omitted). Conclusory allegations offered by the nonmoving party, even in the form of affidavits, do not suffice. *See HHCS Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:16-CV-1169 RLW, 2017 WL 6493168, at *5 (E.D. Mo. Dec. 15, 2017) (**White, J.**). And "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 910 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Summary judgment is inappropriate only if there is a genuine "outcome determinative" dispute of fact under the controlling law. *HHCS Pharmacy, Inc.*, 2017

WL 6493168, at *3 (quoting *Hammer v. City of Osage Beach, Mo.*, 318 F.3d 832, 837 (8th Cir. 2003)).

## ARGUMENT

As set forth herein, the undisputed facts establish that Express Scripts is entitled to summary judgment on its claims for breach of contract on the audited and reversed claims, for which it has not received payment.

### Summary Judgment is Appropriate on Express Scripts' Breach of Contract Claims

Express Scripts is entitled to judgment as a matter of law on its breach of contract claims relating to monies owed for the audit discrepancies and the pharmacy reversals. Precision owes $896,210.00 relating to the audit discrepancies. C&M owes $336,042.07 relating to the audit discrepancies, plus an additional $196,906.97 relating to the reversals. Precision and C&M were not entitled to payment for these claims and Express Scripts never received reimbursement for them.

To prevail on these contract claims, Express Scripts must show: (1) the existence of a valid contract; (2) performance by the party; (3) breach by the counterparty; and (4) resulting damages to the non-breaching party. *See Vantage Credit Union v. Chisholm*, 447 S.W.3d 740, 745 (Mo. Ct. App. 2014) (citing *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010)); *accord, e.g.*, *Surgical Instrument Mfrs., Inc. v. Atlas Spine, Inc.*, No. 4:14 CV 1281 JMB, 2015 WL 6082304, at *5 (E.D. Mo. Oct. 15, 2015).

With respect to Express Scripts' contract claim, there are no material disputes of fact as to any of these elements. First, there is no dispute that the Contract governed the

10

relationship and claims at issue.[40]  Second, Express Scripts performed its obligations under the Contract.[41]

With respect to the third element, it is uncontested that Express Scripts identified discrepancies during the course of field and desk audits of Precision and C&M.[42]  It is also uncontested that neither Precision nor C&M responded or provided any information in response to these audits — or in this lawsuit — to dispute these audit findings or otherwise substantiate the validity of any of these discrepant claims.[43]  The Contract expressly gives Express Scripts the right to recover for these discrepant claims, and yet neither Precision nor C&M has reimbursed Express Scripts for the amount of these claims.[44]

The same holds true for the reversed claims.  Despite C&M's acknowledgement in reversing these claims that the claims were not valid, C&M has failed to reimburse Express Scripts for such claims.[45]

Finally, Express Scripts has been damaged.[46]  Precision owes Express Scripts $896,210.00 for these discrepant claims.  C&M owes Express Scripts $336,042.07 for these discrepant claims, plus an additional $196,906.97 for the claims it reversed.[47]

---

[40] SUMF ¶1-4.

[41] *Id*. at ¶7.

[42] *Id*. at ¶¶9, 12 17.

[43] *Id*. at ¶¶14, 19.

[44] *Id.* at ¶¶5, 15, 20.

[45] *Id*. at ¶¶22-24.

[46] *Id*. at ¶¶15, 20, 25.

[47] SUMF ¶¶15, 20, 25.

Express Scripts is therefore entitled to summary judgment as a matter of law on its claims against Precision and C&M for breach of contract.

## **CONCLUSION**

For the reasons stated herein, Express Scripts respectfully requests that this Court enter summary judgment in Express Scripts' favor on Express Scripts' claims for breach of contract against Precision and C&M as follows:

(1) Against Precision for $896,210.00, relating to monies owed for discrepant claims identified during audits;

(2) Against C&M for $336,042.07, relating to money owed for discrepant claims identified during audits; and

(3) Against C&M for $196,906.97, relating to monies owed for reversed claims.

In addition, Express Scripts respectfully requests that the Court award post-judgment interest on the above amounts and such additional relief as the Court deems appropriate.

Dated: August 28, 2018

Respectfully submitted,

By:   */s/* Christopher A. Smith
    Christopher A. Smith, #53266MO
    Sarah C. Hellmann, #50373MO
    Jason Husgen, #66761MO
    HUSCH BLACKWELL LLP
    190 Carondelet Plaza, Suite 600
    St. Louis, MO  63105
    P: (314) 480-1500
    F: (314) 480-1505
    chris.smith@huschblackwell.com
    sarah.hellmann@huschblackwell.com
    jason.husgen@huschblackwell.com

    Michael J. Lyle (*pro hac vice*)
    Eric C. Lyttle (*pro hac vice*)
    Ethan Glass (*pro hac vice*)
    Meghan A. McCaffrey (*pro hac vice*)
    Michael D. Bonanno (*pro hac vice*)
    QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
    1300 I Street NW, Suite 900
    Washington, DC 20005
    P: (202) 538-8000
    F: (202) 538-8100
    mikelyle@quinnemanuel.com
    ericlyttle@quinnemanuel.com
    ethanglass@quinnemanuel.com
    meghanmccaffrey@quinnemanuel.com
    mikebonanno@quinnemanuel.com

*Attorneys for Defendants/Counter-Plaintiffs Express Scripts Holding Company and Express Scripts, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 28th day of August, 2018 a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.

                                                  */s/* Christopher A. Smith